## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

WARREN CRUMPTON,                               :
AIS 167605,
                                               :

     Petitioner,
                                               :

vs.                                                 CA 11-0086-WS-C
                                               :

TONY PATTERSON,                                :

     Respondent.


## <u>REPORT AND RECOMMENDATION</u>

Warren Crumpton, a state prisoner presently in the custody of the respondent, has petitioned this Court for federal habeas corpus relief pursuant to 28 U.S.C. § 2254. This matter has been referred to the undersigned for the entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4). It is recommended that the instant petition be dismissed as time barred under the Anti-Terrorism and Effective Death Penalty Act's one-year limitations provision contained in 28 U.S.C. § 2244(d). Alternatively, it is recommended that the Court find that it is procedurally barred from reaching the merits of the claims raised by Crumpton.

## BACKGROUND

On June 13, 1997, petitioner was convicted of capital murder in the Circuit Court of Mobile County, Alabama. (Doc. 12, Exhibit A, Case Action Summary Sheet, at 3; *see also* Doc. 1, at 2.) Crumpton was sentenced, that same day, to a term of life imprisonment without the possibility of parole. (*See* Doc. 12, Exhibit A, Case Action Summary Sheet, at 3.) Crumpton's conviction and sentence were affirmed on appeal by unpublished memorandum decision entered on August 14, 1998. *See Crumpton v. State*, 741 So.2d 481 (Ala.Crim.App. 1998) (table). Petitioner's application for rehearing was denied on October 2, 1998, *Crumpton v. State*, 744 So.2d 954 (Ala.Crim.App. 1998) (table) and his  petition for writ of certiorari to the Alabama Supreme Court was denied on December 18, 1998, *Ex parte Crumpton*, 745 So.2d 318 (Ala. 1998) (table).[1]

On December 1, 2008, Crumpton filed a Rule 32 petition in the Circuit Court of Mobile County, Alabama, his fifth but most recent state collateral challenge to his conviction and sentence. (*Compare* Doc. 12, Exhibit D, at 2 *with* Doc. 12, Exhibit A, Case Action Summary Sheet.)[2] Petitioner's Rule 32 petition was summarily dismissed by the trial court on June 10, 2009. (Doc. 12, Exhibit A, ORDER )

---

[1]    The certificate of final judgment of affirmance issued that same date. *Compare id.* with Doc. 12, Exhibit A, Case Action Summary Sheet.

[2]    *See also Crumpton v. State*, 810 So.2d 816 (Ala.Crim.App. 2000) (table); *Crumpton v. State*, 836 So.2d 1007 (Ala.Crim.App. 2001)(table); *Ex parte Crumpton*, 829 So.2d 203 (Ala. 2001) (table); *Crumpton v. State*, 897 So.2d 1254 (Ala.Crim.App. 2003); *Crumpton v. State*, 910 So.2d 834 (Ala.Crim.App. 2004); *Ex parte Crumpton,* 916 So.2d 635 (Ala. 2004) (table); and *Ex parte Crumpton*, 925 So.2d 1026 (Ala. 2005) (table).

Petitioner's claim is time-barred on its face and because Petitioner has failed to assert equitable tolling, his petition should be summarily dismissed. This is also Petitioner's fifth post conviction petition for relief and Petitioner offers no facts to explain why these allegations were not raised in any of his previous petitions. Petitioner's claims for relief are successive and therefore precluded.

Petitioner alleges the Court was without jurisdiction to render the judgment or to impose the sentence because the statute [under] which he was tried, convicted and sentenced is unconstitutional. While couched as a jurisdictional claim, this allegation is actually nonjurisdictional. As such, it is precluded because it could have been raised at trial or on appeal.

Additionally, Alabama's capital murder statute has been upheld in a variety of constitutional challenges. Because this is a nonjurisdictional allegation, it is also precluded by the limitations period. The Court shall not entertain any petition for relief from a conviction or sentence unless the petition is filed within one (1) year after the issuance of the certificate of judgment by the Court of Criminal Appeals.

Petitioner also alleges newly discovered material facts exist which require that the conviction or sentence be vacated by the Court because he can find no proof that the Acting District Attorney, Abraham Mitchell, was appointed by the Governor, therefore the grand jury proceeding was not conducted as proscribed by statute. Petitioner has failed to meet the requirements of Rule 32.1(e). Petitioner has failed to allege this fact was not known to him or his counsel at the time of trial or sentencing or in time to file a posttrial motion, or in time to be included in a[] previous collateral proceeding and could not have been discovered by any of those times through the exercise of reasonable diligence; this fact is not merely cumulative to other facts that were known; this fact does not amount to impeachment evidence; if this fact had been known at the time of trial or sentencing, the result probably would have been different; and this fact establishes that he is actually innocent of the crime for which he was convicted or he should not have received the sentence he received.

Additionally, Petitioner's allegation is without merit. Defects in an indictment which may be challenged at any time contend that the indictment failed to charge an offense. The <u>Savage</u> court went on to cite

that certain defects in the indictment must be raised prior to trial, or will result in waiver. These are objections or defects in the indictment which go to form rather than substance and include the failure of the district attorney to sign the indictment. Therefore, Petitioner's allegation that Abraham Mitchell was unauthorized to sign and present the evidence to the grand jury is without merit because it does not go to the substance of the indictment, but rather to the form of the indictment.

Accordingly, this Court is authorized summarily to dismiss the petition without an evidentiary hearing because the allegations raised are precluded, fail to state a claim and raise no issue of material fact or law.

The petition is dismissed under Rule 32.7.

(*Id.* at 3-5 (internal citations omitted).) The Alabama Court of Criminal Appeals affirmed the judgment of the circuit court on January 22, 2010 in an unpublished memorandum opinion. (Doc. 12, Exhibit D.)

Crumpton claims that the trial court was without jurisdiction to render judgment or impose sentence because the statute upon which he was charged was unconstitutional. Crumpton's claims are nonjurisdictional constitutional allegations subject to the procedural bars of Rule 32. The circuit court correctly ruled that this claim is procedurally barred from this Court's review as it could have been addressed at trial or raised on direct appeal, but was not. Rule 32.2(a)(3) and 32.2(a)(5), Ala.R.Crim.P.

.   .   .

Crumpton claims that there is newly discovered evidence in his case that the trial court lacked jurisdiction to impose sentence. Specifically, Crumpton argues that the acting district attorney, Abraham Mitchell, who appeared before the grand jury at his indictment was not appointed by the Governor of the State of Alabama pursuant to § 12-17-181, Ala. Code 1975.

To establish a claim based on newly discovered evidence, the appellant must show that "[t]he facts relied upon were not known by the

4

petitioner or the petitioner's counsel at the time of trial or sentencing or in time to file a posttrial motion pursuant to Rule 24, or in time to be included in any previous collateral proceeding and could not have been discovered by any of those times through the exercise of reasonable diligence." Rule 32.1(e)(1), Ala.R.Crim.P. Crumpton's alleged newly discovered evidence does not satisfy the requirements of Rule 32.1(e) [] nor has Crumpton demonstrated that the grounds for his claim are based upon newly discovered material facts. Therefore, this claim is procedurally barred by Rules 32.2(a)(3) and (a)(5) and (c) as pleaded by the State.

Further, Crumpton is essentially arguing that his indictment is defective, which is a nonjurisdictional claim. While Crumpton does allege that the governor did not appoint the district attorney which (sic) signed his indictment, and while Crumpton further alleges that this affects the <u>substance</u> of the indictment, the circuit court does not derive its jurisdiction from the district attorney in a criminal action. Therefore, the validity of the appointment of a district attorney would not affect the jurisdiction of a circuit court. Thus the circuit court correctly ruled that this claim has no merit and that summary dismissal was appropriate under Rule 32.7(d).

For the foregoing reasons, the judgment of the circuit court is due to be affirmed.

(*Id*. at 5-6 (some internal citations omitted).) Crumpton's application for rehearing was overruled and his petition for writ of certiorari (Doc. 12, Exhibit E) was denied, without written opinion, on December 10, 2010 (Doc. 12, Exhibit F). The certificate of final judgment of affirmance issued that same date, December 10, 2010 (*compare id. with* Doc. 12, Exhibit G).

On February 16, 2011, Crumpton filed the instant habeas corpus action in this Court collaterally attacking his conviction and sentence (*see* Doc. 1, at 13). Therein,

Crumpton raises the same two issues he has most recently pursued in the state courts of Alabama, namely: (1) he was denied due process of law because he was convicted and sentenced for capital murder pursuant to an unconstitutional state statute— § 13A-5-40(a)(10)—that fails to define an essential element of the crime; and (2) he was denied due process of law and a fundamentally fair trial because he was tried, convicted, and sentenced of charges over which the state court did not have jurisdiction since the acting district attorney who appeared before the grand jury was not appointed in the manner proscribed by law. (Doc. 1, at 7 & 14-16.) In his answer, the respondent asserted both a statute of limitations defense and a procedural default defense. (*See* Doc. 12.) Therefore, the undersigned entered an order on June 27, 2011 requiring Crumpton to respond to the respondent's asserted defenses. (Doc. 13.) Crumpton filed his response on August 30, 2011. (Doc. 16.) In his response, Crumpton rather confusingly combines his arguments regarding why neither defense is applicable to his case. (*See id.* at 4-6.)

> First Crumpton argues that both of his claims challenges the State of Alabama jurisdiction to render judgment and should fall under the miscarriage of judgment (sic) exception. First Crumpton claims that the State Court lacked jurisdiction to charge, try and convict him, because the Statute upon which he was indicted, 13A-5-40(a)(10) Ala.Code 1975, is Unconstitutional on its face [and] should be exempt from the AEDPA Statute of limitations and/or should be a sufficient basis from which he could argue[] that he is "actually innocent" and entitled to habeas relief. Because to allow Crumpton to stand convicted under a Statute that is Unconstitutional on its face, would fall within the "narrow scope" of the "miscarriage of justice exception" as defined by the Supreme Court. Despite of the State Court holding that Crumpton's challenge to the Constitutionality of the Statute is non-jurisdictional, such finding is

6

Contrary to and involve an unreasonable application of clearly established precedents of the United States Supreme Court.

.      .      .

Crumpton aver[]s because 13A-5-40(a)(10) is unconstitutional on its face it cannot be a constitutional valid legal cause of Crumpton's imprisonment[,] and this Court's failure to entertain this claim will certainly result in a fundamental miscarriage of justice being imposed upon Crumpton.

Crumpton's second claim that he was denied due process and a fundamental[ly] fair trial when he was tried, convicted and sentenced on charges that the State Court did not have jurisdiction to adjudicate, because the acting District Attorney who appeared before the Grand Jury was not appointed in the manner prescribed by law, was also based upon Newly Discovered Evidence. . . .  Crumpton argued as he does in this Court that Newly Discovered Evidence exist which requires that his conviction be vacated, because the trial court was without jurisdiction to render judgment, where the purported Acting District Attorney, Abraham Mitchell, that (sic) appeared before the Grand Jury, was not appointed as prescribed by Law, and was therefore, unauthorized to appear before the Grand Jury and present[] evidence. . . . The record is clear that Crumpton diligently sought evidence of this claim[,][3] . . . and once the factual predicate was discovered he presented the claim in the applicable time required by Rule 32.1(e) Ala.R.Crim.P.

Second, it is clear that both statutory law and procedure rules was not followed in the return of Crumpton's indictment, rendering the indictment void and not voidable. Although the Supreme Court has not defined the circumstances in which impropriety involving even a federal

---

[3]      In support of this argument, petitioner cites to his June 17, 2008 letter penned to Alabama's Secretary of State, Beth Chapman, requesting "a copy of the document showing that Governor Fob James appointed Abraham Mitchell as acting District Attorney of Mobile County[]" (Doc. 12, Exhibit A, at 57) and the July 7, 2008 response from the office of the Secretary of State that it had been unable "to locate the oath of Mr. Mitchell that you have requested." (*Id*. at 58.)

grand jury can ever lead to dismissal of an indictment once a petit jury has returned a verdict of guilt[,] [a]nd while there is no constitutional requirement that States institute prosecutions by means of an indictment returned by a grand jury, that fact does not relieve those States that do employ grand juries from complying with the commands of the Fourteenth Amendment in the operation of those juries. Surely, Crumpton cannot stand convicted of an indictment that was returned based on evidence presented by an illegal prosecutor, such action renders the indictment void ab initio. Crumpton also invokes the factual predicate exception of 28 U.S.C. § 2244(d)(1)(D). [S]uch exception restarts the statute of limitations period from the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(*Id.* at 4-5, 5, 5-6 & 6 (internal citations omitted; footnote added).)


## CONCLUSIONS OF LAW

### A.   Statute of Limitations & Application of the Statute to the Facts of this Case.

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") was enacted on April 24, 1996 and, pertinent to this case, added a new subdivision to 28 U.S.C. § 2244 providing for a one-year period of limitations within which state prisoners must file their habeas corpus petitions pursuant to 28 U.S.C. § 2254. *Wilcox v. Florida Dept. of Corrections*, 158 F.3d 1209, 1210 (11th Cir. 1998).

(d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of—

(A) the date on which the judgment became

final by the conclusion of direct review or the
expiration of the time for seeking such review;

  (B) the date on which the impediment to filing
an application created by State action in violation of
the Constitution or laws of the United States is
removed, if the applicant was prevented from filing
by such State action;

  (C) the date on which the constitutional right
asserted was initially recognized by the Supreme
Court, if the right has been newly recognized by the
Supreme Court and made retroactively applicable to
cases on collateral review; or

  (D) the date on which the factual predicate of
the claim or claims presented could have been
discovered through the exercise of due diligence.

(2)  The time during which a properly filed application for State
post-conviction or other collateral review with respect to the
pertinent judgment or claim is pending shall not be counted toward
any period of limitation under this subsection. 28 U.S.C. § 2244(d).

  Subsections (B), (C), and (D) of § 2244(d)(1) clearly do not apply to petitioner's

case[4] and therefore, the timeliness of Crumpton's petition must be calculated under §

---

[4] Petitioner suggests that subsection (D) is applicable to his case because he did not
discover the factual predicate for his indictment claim until long after the date on which his
judgment of conviction became final by the conclusion of direct review under subsection (A).
(*See* Doc. 16, at 6.) While the undersigned certainly is inclined to find that petitioner discovered
the factual predicate for his indictment claim in July of 2008 (*see* Doc. 12, Exhibit A, at 57-58
(Crumpton's June 17, 2008 letter to the Alabama Secretary of State requesting a copy of the
document showing the Governor appointed Abraham Mitchell as Acting District Attorney of
Mobile County and the July 7, 2008 letter to petitioner from the office of the Secretary of State
wherein that office indicated that it could not "locate the oath of Mr. Mitchell" requested)), as he
claims, this does not mean that Crumpton could not have discovered such factual predicate
much earlier through the exercise of reasonable diligence.

2244(d)(1)(A) based upon the date on which his capital murder conviction became final.

"For prisoners whose convictions became final prior to the effective date of the AEDPA,

the one-year statute of limitations instituted by the AEDPA began to run on its effective

date, i.e., April 24, 1996." *Guenther v. Holt*, 173 F.3d 1328, 1331 (11th Cir. 1999) (citations

---

It is clear in this circuit that "[t]he limitations period under § 2244(d)(1)(D) begins when the factual predicate of a claim could have been discovered using due diligence, ***not when it was actually discovered***[,]" and, further, that "[d]ue diligence means the petitioner 'must show some good reason why he . . . was unable to discover the facts' at an earlier date." *Melson v. Allen*, 548 F.3d 993, 999 (11th Cir. 2008), *cert. granted & judgment vacated on other grounds*, 130 S.Ct. 3491, 177 L.Ed.2d 781 (2010), *on remand to Melson v. Allen*, 611 F.3d 1380 (11th Cir. 2010) (remanding case to district court for further consideration in light of the Supreme Court's decision in *Holland v. Florida, infra*).

> Merely alleging that an applicant "did not actually know the facts underlying his . . . claim does not pass the test." Instead, the inquiry focuses on "whether a reasonable investigation would have uncovered the facts the applicant alleges are 'newly discovered.'"

548 F. 3d at 999 (internal citations omitted); *see Green v. Benton*, 2007 WL 710153, *4 (S.D. Ga. Mar. 6, 2007) ("The discovery of a factual predicate for the claims is all that is necessary, not the discovery of a legal basis or all evidence supporting the claims. Section 2244(d)(1)(D) does not apply to those who sleep on their rights, only those who could not discover the factual predicate for their claims through the exercise of due diligence. Petitioner bears the burden of persuading the Court that he exercised due diligence in searching for the factual predicate of the habeas claims." (internal citations omitted)).

> There is nothing in the record indicating any reason why Crumpton could not have discovered the factual predicate for his indictment issue years before he did so. Instead, Crumpton simply alleges he did not discover the factual predicate until he received a response to his June 17, 2008 letter to the Secretary of State, an allegation that does not satisfy his burden of demonstrating due diligence. Simply put, Crumpton has failed to set forth any facts demonstrating diligent progress towards the discovery of the factual predicate underlying his indictment claim or that, despite his best efforts, he was not able to assert this claim within the statutory time period. Because the undersigned is of the opinion that Crumpton could have raised his indictment issue years before he did so, § 2244(d)(1)(D) is unavailable to him for purposes of statutory tolling.

10

omitted), *cert. denied*, 528 U.S. 1085, 120 S.Ct. 811, 145 L.Ed.2d 683 (2000). This rule from *Guenther* is obviously not applicable in this case since Crumpton's conviction became final in 1999.

Section 2244(d)(1)(A) specifically provides that the one-year limitations period will run from "the date on which the judgment became final by the conclusion of direct review or the expiration of time for seeking such review[.]" In *Bond v. Moore*, 309 F.3d 770 (2002) and *Jackson v. Secretary for the Department of Corrections*, 292 F.3d 1347 (2002), the Eleventh Circuit joined the majority of circuits regarding the meaning of subsection (A) and held that the statute of limitations period contained in 28 U.S.C. § 2244(d) does not begin to run "until the 90-day window during which Appellant could have petitioned the United States Supreme Court for a writ of certiorari expired." 309 F.3d at 771; *see also id.* at 774 ("Appellant was entitled to file a petition for a writ of certiorari in the United States Supreme Court within 90 days of the entry of the judgment against him by the Florida Supreme Court. Sup.Ct.R. 13.1. The statute of limitations under 28 U.S.C. § 2244(d) should not have begun to run until this 90-day window had expired. Appellant's state judgment became final on December 13, 1996, when the Florida Supreme Court denied Appellant's motion for a rehearing. The statute of limitations should have begun to run, therefore, on March 13, 1997."); *Jackson, supra*, 292 F.3d at 1348-1349 & 1349 ("While we have not directly dealt with the issue in the context of a section 2254 petition, we indicated in dicta that, under the AEDPA, a state prisoner may

have the benefit of the 90-day window before his conviction is considered final. . . . In

the instant case, the Fourth District Court of Appeals of Florida [] affirmed Jackson's

conviction on October 17, 1997. Giving Jackson the extra 90 days in which he could have

filed for certiorari to the Supreme Court, Jackson's conviction became final at the latest

on January 15, 1998."); *see Pugh v. Smith,* 465 F.3d 1295, 1299 (11th Cir. 2006) (AEDPA's

one-year statute of limitations "allows a prisoner the time to seek direct review in the

Supreme Court of the United States."); *Locke v. Saffle*, 237 F.3d 1269, 1273 (10th Cir. 2001)

("Under the statute, a petitioner's conviction is not final and the one-year limitation

period for filing a federal habeas petition does not begin to run until--following a

decision by the state court of last resort--'after the United States Supreme Court has

denied review, or, if no petition for certiorari is filed, after the time for filing a petition

for certiorari with the Supreme Court has passed.'"); *Bronaugh v. Ohio*, 235 F.3d 280, 283

(6th Cir. 2000) ("[T]he one-year statute of limitations does not begin to run until the

time for filing a petition for a writ of certiorari for direct review in the United States

Supreme Court has expired.  A criminal defendant has only ninety days following the

entry of judgment by the 'state court of last resort' in which to file a petition for a writ of

certiorari."); *United States v. Torres*, 211 F.3d 836, 839-840 (4th Cir. 2000) ("In § 2244,

Congress specifically stated that the one-year limitation period will run from the time

that a state judgment becomes final 'by the conclusion of direct review or the expiration

of the time for seeking such review.' . . . In using this phrase, Congress offered two

12

dates from which its one-year limitation period can begin running: (1) at the conclusion of direct review or (2) at the expiration of time in which further direct review could have been sought, but was not.  Congress, therefore, expressly provided an alternative starting date for its limitation period in the circumstance where a state defendant fails to seek further direct review of his conviction.  The language Congress used, 'by the conclusion of direct review or the expiration of the time for seeking such review,' expands the period of time before the start of the limitation period for filing a habeas petition beyond the date that marks the conclusion of direct review of that judgment."); *Bowen v. Roe,* 188 F.3d 1157, 1158-1159 (9th Cir. 1999) ("We hold that the period of 'direct review' in 28 U.S.C. § 2244(d)(1)(A) includes the period within which a petitioner can file a petition for a writ of certiorari from the United States Supreme Court, whether or not the petitioner actually files such a petition.  Therefore, when a petitioner fails to seek a writ of certiorari from the United States Supreme Court, the AEDPA's one-year limitations period begins to run on the date the ninety-day period defined by Supreme Court Rule 13 expires."). Under the facts of this case, this Court need add the ninety days contemplated by Supreme Court Rule 13.1 since petitioner appealed his case to the Alabama Supreme Court on his direct appeal as of right. The certificate of judgment of final affirmance issued in this case on the same date that Crumpton's petition for writ of certiorari to the Alabama Supreme Court was denied, that is, December 18, 1998. Ninety days added to this date renders a beginning date for petitioner's statute of limitations of

March 18, 1999.

Petitioner's one-year period of limitations under AEDPA began to run on March 18, 1999 and ran unabated for 218 days until Crumpton filed his first Rule 32 petition in the Circuit Court of Mobile County, Alabama on October 22, 1999. (*See* Doc. 12, Exhibit A, Case Action Summary Sheet.) Crumpton's one-year limitations period was tolled until the certificate of final judgment of affirmance was issued by the Alabama Court of Criminal Appeals on June 6, 2000 (*see id.*) thereby ending petitioner's first collateral attack on his conviction and sentence. Crumpton filed another Rule 32 petition in the Mobile County Circuit Court some 120 days later on October 4, 2000 (*see id.*), and even assuming that subsequent petition again tolled the one-year limitations period, petitioner's one-year limitations period certainly expired during the nearly two year lapse of time between the conclusion of Crumpton's second Rule 32 petition (that is, August 31, 2001)[5] and the filing of his third Rule 32 petition on May 15, 2003 (*see* Doc. 12, Exhibit A, Case Action Summary Sheets). *Compare McCloud v. Hooks*, 560 F.3d 1223, 1227 (11th Cir. 2009) ("While a Rule 32 petition is a tolling motion under § 2244(d)(2), it cannot toll the one-year limitations period if that period has expired prior to filing the Rule 32 petition.") *with Howell v. Crosby*, 415 F.3d 1250, 1251 (11th Cir. 2005) ("On March 19, 1999, Howell's attorney filed a motion for an extension of time within which to file a

---

[5]     At the very least, then, petitioner's one-year limitations period expired on September 27, 2001.

petition for postconviction relief. That motion was granted and Howell's attorney filed a state petition for postconviction relief on August 30, 199 9, more than two months after the federal limitations period elapsed. It is undisputed that Howell's motion for an extension of time did not meet the criteria of section 2244(d)(2) as a 'properly filed application' for postconviction relief."), *cert. denied*, 546 U.S. 1108, 126 S.Ct. 1059, 163 L.Ed.2d 885 (2006), and *Webster v. Moore*, 199 F.3d 1256, 1259 (11th Cir.) ("Under § 2244(d)(2), even 'properly filed' state-court petitions must be 'pending' in order to toll the limitations period. A state-court petition like Webster's that is filed following the expiration of the limitations period cannot toll that period because there is no period remaining to be tolled."), *cert. denied*, 531 U.S. 991, 121 S.Ct. 481, 148 L.Ed.2d 454 (2000); *see also Pace v. DiGuglielmo,* 544 U.S. 408, 413, 125 S.Ct. 1807, 1811-1812, 161 L.Ed.2d 669 (2005) ("As in *Artuz*, we are guided by the 'common usage' and 'commo[n] underst[anding]' of the phrase 'properly filed.' In common understanding, a petition filed after a time limit, and which does not fit within any exceptions to that limit, is no more 'properly filed' than a petition filed after a time limit that permits no exceptions. The purpose of AEDPA's statute of limitations confirms this commonsense reading. On petitioner's theory, a state prisoner could toll the statute of limitations at will by filing untimely state postconviction petitions. This would turn § 2244(d)(2) into a *de facto* extension mechanism, quite contrary to the purpose of AEDPA, and open the door to abusive delay.").  Accordingly, the only arguable means by which this Court can

15

proceed further in its analysis is by finding that petitioner is entitled to equitable tolling of AEDPA's one-year limitations period.

Recently, in *Holland v. Florida*, 560 U.S. __, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010), the Supreme Court specifically held, for the first time, that "§ 2244(d) is subject to equitable tolling in appropriate cases[,]" *id.* at __, 130 S.Ct. at 2560, and reiterated "that a 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* at __, 130 S.Ct. at 2562. For its part, the Eleventh Circuit has long embraced the doctrine of equitable tolling with regard to the one-year limitations period at issue:  "Equitable tolling is to be applied when '"extraordinary circumstances" have worked to prevent an otherwise diligent petitioner from timely filing his petition.' . . . Thus, the petitioner must show both extraordinary circumstances and due diligence in order to be entitled to equitable tolling." *Diaz v. Secretary for the Dept. of Corrections*, 362 F.3d 698, 700-701 (11th Cir. 2004) (citation omitted). "Section 2244 is a statute of limitations, not a jurisdictional bar. Therefore, it permits equitable tolling 'when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence.'" *Steed v. Head,* 219 F.3d 1298, 1300 (11th Cir. 2000) (citation omitted).  Thus, the one-year limitations provision need not be equitably tolled unless there is evidence that "extraordinary circumstances" beyond petitioner's control made it impossible for him to file his petition on time.  *See*

16

*Miller v. New Jersey State Dept. of Corrections*, 145 F.3d 616, 618-619 (3rd Cir. 1998)

("[E]quitable tolling is proper only when the 'principles of equity would make [the]

rigid application [of a limitation period] unfair.' . . . Generally, this will occur when the

petitioner has 'in some extraordinary way . . . been prevented from asserting his or her

rights.' . . . The petitioner must show that he or she 'exercised reasonable diligence in

investigating and bringing [the] claims.' . . . Mere excusable neglect is not sufficient.");

*Calderon v. United States District Court for the Central District of California*, 128 F.3d 1283,

1288 (9th Cir. 1997) ("Equitable tolling will not be available in most cases, as extensions

of time will only be granted if 'extraordinary circumstances' beyond a prisoner's control

make it impossible to file a petition on time."), *cert. denied*, 522 U.S. 1099, 118 S.Ct. 899,

139 L.Ed.2d 884 (1998) and *cert. denied sub nom. Beeler v. Calderon*, 523 U.S. 1061, 118 S.Ct.

1389, 140 L.Ed.2d 648 (1998). The Supreme Court in *Holland* indicated that "[t]he

diligence required for equitable tolling purposes is reasonable diligence, not maximum

feasible diligence[,]" *id.* at __, 130 S.Ct. at 2565, and gave the following guidance with

respect to "extraordinary circumstances":

> We have previously held that "a garden variety claim of excusable
> neglect," such as a simple "miscalculation" that leads a lawyer to miss a
> filing deadline, does not warrant equitable tolling. But the case before us
> does not involve, and we are not considering, a "garden variety claim" of
> attorney negligence. Rather, the facts of this case present far more serious
> instances of attorney misconduct. And, as we have said, although the
> circumstances of a case must be "extraordinary" before equitable tolling
> can be applied, we hold that such circumstances are not limited to those
> that satisfy the test that the Court of Appeals used in this case.

17

The record facts that we have set forth in Part I of this opinion suggest that this case may well be an "extraordinary" instance in which petitioner's attorney's conduct constituted far more than "garden variety" or "excusable neglect." To be sure, Collins failed to file Holland's petition on time and appears to have been unaware of the date on which the limitations period expired-two facts that, alone, might suggest simple negligence. But, in these circumstances, the record facts we have elucidated suggest that the failure amounted to more: Here, Collins failed to file Holland's federal petition on time despite Holland's many letters that repeatedly emphasized the importance of his doing so. Collins apparently did not do the research necessary to find out the proper filing date, despite Holland's letters that went so far as to identify the applicable legal rules. Collins failed to inform Holland in a timely manner about the crucial fact that the Florida Supreme Court had decided his case, again despite Holland's many pleas for that information. And Collins failed to communicate with his client over a period of years, despite various pleas from Holland that Collins respond to his letters.

*Id.* at __, 130 S.Ct. at 2564.

In this case, petitioner has not established that the instant habeas corpus petition was timely filed nor has he established that extraordinary circumstances and due diligence counsel equitable tolling of the limitations period. *See Spottsville v. Terry*, 476 F.3d 1241, 1245 (11th Cir. 2007) ("'The burden of establishing entitlement to this extraordinary remedy plainly rests with the petitioner[.]'"). Petitioner makes no argument that he was ignorant of the one-year limitations period (*see* Doc. 16).[6] Instead,

---

[6]     In truth, such an argument would not serve as a basis to equitably toll the limitations period. *Gardner v. Walker*, 2005 WL 1127137, *1 (M.D. Ga. May 7, 2005) ("'Ignorance of the law is no excuse; it is not a reason for equitable tolling.' . . . Here, Petitioner's Objection is without merit because his ignorance of AEDPA's limitations period fails to amount to 'extraordinary circumstance[s]' for equitable tolling purposes."); *see also Burton v. Deloach*, 2008

it is Crumpton's apparent position that the one-year limitations period simply is not applicable to his case since he raises jurisdictional issues. (*Compare* Doc. 16, at 4 *with* Doc. 1, at 12.) However, Crumpton has cited no authority which stands for this proposition; in fact, the authority which exists stands for the contrary. *See, e.g., Barreto-Barreto v. United States*, 551 F.3d 95, 100 (1st Cir. 2008) (pointing out that "[n]othing in the language of § 2255 suggests that jurisdictional challenges are exempt from the one-year limitations period" and holding that such petitions "are not exempt from § 2255's filing deadline"); *Davis v. Secretary, Dep't of Corrections*, 2009 WL 4730548, *1 (M.D. Fla. Dec. 7, 2009) ("There is no exception under AEDPA's statute of limitation for a § 2254 claim that the state court lacked subject matter jurisdiction to impose the sentence for the conviction because the indictment was defective."); *United States v. Williams*, 2009 WL 3230399, *8 (N.D. Fla. Oct. 2, 2009) ("Jurisdiction is specifically listed as a ground for § 2255 relief, and is not excluded from [] the one year limitations period of § 2255(f)[.]"), *aff'd*, 383 Fed.Appx. 927 (11th Cir. June 21, 2010), *cert. denied*, __ U.S. __, 131 S.Ct. 846, 178 L.Ed.2d 575 (2010). Accordingly, the undersigned concludes that nothing other than petitioner's own lack of due diligence is responsible for the untimeliness of the filing of

---

WL 2131398, *2 (M.D. Ala. Mar. 13, 2008) ("The law is well settled that an inmate's lack of legal knowledge, his failure to understand legal principles and/or the inability to recognize potential claims for relief at an earlier juncture do not constitute extraordinary circumstances sufficient to warrant equitable tolling of the limitation period."), *report & recommendation adopted by* 2008 WL 2131395 (M.D. Ala. May 20, 2008); *see Teel v. Farrell*, 2006 WL 1148817, *4 (M.D. Ala. Apr. 28, 2006) ("[A]n inmate's status as a pro se litigant does not warrant equitable tolling.").

the instant petition. This is simply not one of those rare cases in which principles of

equitable tolling can save petitioner from AEDPA's one-year limitations period.

Not to be dissuaded, however, petitioner's final argument in this regard is that

the one-year limitations period should be equitably tolled because he is "actually

innocent." (*See* Doc. 16, at 4 ("First Crumpton claims that the State Court lacked

jurisdiction to charge, try and convict him, because the Statute upon which he was

indicted, 13A-5-40(a)(10) Ala.Code 1975, is Unconstitutional on its face [and] should be

exempt from the AEDPA Statute of limitations and/or should be a sufficient basis from

which he could argue[] that he is 'actually innocent' and entitled to habeas relief.").)

Although the Eleventh Circuit has not yet decided "whether a showing of actual

innocence is an exception to the one-year statute of limitations in AEDPA[,]" *Ray v.*

*Mitchem*, 272 Fed.Appx. 807, 810 n.2 (11th Cir.),[7] *cert. denied*, __ U.S. __, 129 S.Ct. 204, 172

L.Ed.2d 170 (2008), it has guided courts to make the actual innocence inquiry as

opposed to "addressing the difficult constitutional question of whether the limitations

period constitutes a violation of the Suspension Clause if the petitioner can show actual

innocence[.]" *Id*. To be credible, a claim of actual innocence "requires petitioner to

support his allegations of constitutional error with new reliable evidence—whether it be

exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical

---

[7]     "Unpublished opinions are not considered binding precedent, but they may be
cited as persuasive authority." 11th Cir. R. 36-2.

evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 865, 130 L.Ed.2d 808 (1995); *see also id*. at 327, 115 S.Ct. at 867 ("To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence."). Crumpton has not come forward with any new reliable evidence which establishes his actual innocence of capital murder and thereby undermines his capital murder conviction. Accordingly, his federal habeas petition is time-barred. *Cf. Justo v. Culliver*, 317 Fed.Appx. 878, 881 (11th Cir. Aug. 21, 2008) ("Justo fails to show actual innocence to the offense to which he pleaded guilty. No error has been shown in the dismissal of Justo's habeas petition as time-barred.").

**B.      Procedural Default Doctrine.**

In *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), the Supreme Court stated that it would "not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Id*. at 729, 111 S.Ct. at 2553-2554. This rule applies whether the state law ground is procedural or substantive. *Id*. at 729, 111 S.Ct. at 2554. The doctrine applies to bar federal habeas review when a state court declines to address a petitioner's federal claims because the petitioner fails to meet a state procedural requirement. *Id*. at 729-730, 111 S.Ct. at 2554; *see also Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) (federal courts must honor

legitimate state trial and appellate procedural rules when enforced by state courts and must decline to review on the merits claims that the state treats as barred absent a showing of cause for non-compliance with such rules and resulting prejudice); *Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir.) ("Pursuant to the doctrine of procedural default, a state prisoner seeking federal habeas corpus relief, who fails to raise his federal constitution[al] claim in state court, or who attempts to raise it in a manner not permitted by state procedural rules is barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default."), *cert. denied sub nom. Alderman v. Thomas*, 513 U.S. 1061, 115 S.Ct. 673, 130 L.Ed.2d 606 (1994). A violation of a state procedural rule is adequate to foreclose federal review if the rule is "'firmly established and regularly followed.'" *Lee v. Kemna*, 534 U.S. 362, 376, 122 S.Ct. 877, 885, 151 L.Ed.2d 820 (2002). "In these cases, the state judgment rests on independent and adequate state procedural grounds." *Coleman*, 501 U.S. at 730, 111 S.Ct. at 2554 (citations omitted).

The application of the independent and adequate state ground doctrine in the habeas context is grounded in concerns of federalism and comity. *Id.*

> Without the rule, a federal district court would be able to do in habeas what this Court could not do on direct review; habeas would offer state prisoners whose custody was supported by independent and adequate state grounds an end run around the limits of this Court's jurisdiction and a means to undermine the State's interest in enforcing its laws.

*Id.* at 730-731, 111 S.Ct. at 2554.

An additional consideration comes to the fore when the independent and adequate state ground supporting a petitioner's custody is a state procedural default. *Id*. at 731, 111 S.Ct. at 2554. The Supreme Court has long held

> that a state prisoner's federal habeas petition should be dismissed if the prisoner has not exhausted available state remedies as to any of his federal claims. This exhaustion requirement is also grounded in principles of comity; in a federal system, the States should have the opportunity to address and correct alleged violations of state prisoners' federal rights.
>
> .     .     .
>
> [A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance. A habeas petitioner who has defaulted his federal claims in state court meets the technical requirement for exhaustion; there are no state remedies any longer "available" to him. In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court. The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases.

*Id*. at 731, 732, 111 S.Ct. at 2554-2555, 2555 (internal citations omitted).

In the habeas context, federal courts are to "presume that there is no independent and adequate state ground for a state court decision when the decision 'fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion.'" *Id*. at 735, 111 S.Ct. at 2557 (quoting *Michigan v. Long*, 463 U.S. 1032, 1040-1041, 103 S.Ct. 3469, 3476-3477, 77 L.Ed.2d 1201 (1983)); *see Harris v. Reed*, 489 U.S.

255, 263, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989) ("[A] procedural default does not

bar consideration of a federal claim on either direct or habeas review unless the last

state court rendering a judgment in the case 'clearly and expressly' states that its

judgment rests on a state procedural bar.").  In all other cases, the presumption is not

applicable.  *See Coleman*, 501 U.S. at 739, 111 S.Ct. at 2559.  In *Teague v. Lane*, 489 U.S.

288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), the Supreme Court held that the *Harris v.*

*Reed* presumption is inapplicable to a claim that is never presented to the state courts.

*Id*. at 299, 109 S.Ct. at 1069 ("The rule announced in *Harris v. Reed* assumes that a state

court has had the opportunity to address a claim that is later raised in a federal habeas

proceeding.").  Moreover, the presumption "looks through" unexplained orders to the

last reasoned decision.  *Ylst  v. Nunnemaker*, 501 U.S. 797, 804, 111 S.Ct. 2590, 2595, 115

L.Ed.2d 706 (1991).

> Where there has been one reasoned state judgment rejecting a federal
> claim, later unexplained orders upholding that judgment or rejecting the
> same claim rest upon the same ground.  If an earlier opinion "fairly
> appear[s] to rest primarily upon federal law," *Coleman*, 501 U.S., at 740,
> 111 S.Ct., at 2559, we will presume that no procedural default has been
> invoked by a subsequent unexplained order that leaves the judgment or
> its consequences in place.  Similarly where . . . the last reasoned opinion
> on the claim explicitly imposes a procedural default, we will presume that
> a later decision rejecting the claim did not silently disregard that bar and
> consider the merits.

501 U.S. at 803, 111 S.Ct. at 2594.  Also, the presumption "may not be applied in cases in

which the state court opinion did not, at a minimum, discuss the federal grounds at

24

issue." *Tower v. Phillips*, 7 F.3d 206, 211 (11th Cir. 1993) ("*Coleman* and *Ylst* lead us to conclude that we may not assume that had the state court issued an opinion, it would have ignored its own procedural rules and reached the merits of this case. In fact, the most reasonable assumption is that had the state court ruled, it would have enforced the procedural bar."). Finally, "where a state court has ruled in the alternative, addressing both the independent state procedural ground and the merits of the federal claim, the federal court should apply the state procedural bar and decline to reach the merits of the claim." *Alderman v. Zant, supra*, 22 F.3d at 1549.

When a petitioner has procedurally defaulted a claim, a federal court is barred from reaching the merits of that claim unless the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[] will result in a fundamental miscarriage of justice." *Coleman, supra*, 501 U.S. at 750, 111 S.Ct. at 2565. The cause and prejudice standard applies "uniformly to all independent and adequate state procedural defaults." *Id.* at 750-751, 111 S.Ct. at 2565.

> In procedural default cases, the cause standard requires the petitioner to show that "some objective factor external to the defense impeded counsel's efforts" to raise the claim in state court. Objective factors that constitute cause include "'interference by officials'" that makes compliance with the state's procedural rule impracticable, and "a showing that the factual or legal basis for a claim was not reasonably available to counsel." In addition, constitutionally "[i]neffective assistance of counsel . . . is cause." Attorney error short of ineffective assistance of counsel, however, does not constitute cause and will not excuse a

procedural default. Once the petitioner has established cause, he must show "'actual prejudice' resulting from the errors of which he complains."

Federal courts retain the authority to issue the writ of habeas corpus in a further, narrow class of cases despite a petitioner's failure to show cause for a procedural default. These are extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime. We have described this class of cases as implicating a fundamental miscarriage of justice.

*McCleskey v. Zant*, 499 U.S. 467, 493-494, 111 S.Ct. 1454, 1470, 113 L.Ed.2d 517 (1991) (internal citations omitted).

### C. Application of the Procedural Default Doctrine.

In his answer, respondent asserts that this Court is procedurally barred from reaching the merits of petitioner's claims pursuant to Rules 32.2(a)(3), (a)(5), and (c) of the Alabama Rules of Criminal Procedure, based upon the decisions of the Alabama Court of Criminal Appeals and the Mobile County Circuit Court. (*See* Doc. 12, at 9-10.) In this case, the undersigned finds that petitioner did not substantially comply with Rules 32.2(a)(3), (a)(5), and (c) because the above-identified claims were not raised at trial or on direct appeal even though they certainly could have been nor were they raised within Alabama's one-year limitations period for the filing of collateral petitions; the Alabama Court of Criminal Appeals clearly and expressly stated that its judgment rested on petitioner's failure to comply with Rule 32.2(a)(3), (a)(5), and (c); and, finally, Rules 32.2(a)(3), (a)(5), and (c) are firmly established and regularly followed when applied by the state courts of Alabama, *compare Borden v. Allen,* 646 F.3d 785, 800 (11th

26

Cir. 2011) ("The State's other motion sought dismissal of some of Borden's claims—claims not at issue here—under Rule 32.2(a) of the Alabama Rules of Criminal Procedure, which precludes collateral relief for a petitioner who fails to comply with state procedural rules.") *with McGahee v. Campbell,* 2007 WL 3025192, *13 & 14 (S.D. Ala. Feb. 14, 2007) ("Petitioner then raised these claims in his Rule 32 petition, and the trial court held that the claims were barred from review under Rule 32.2(a) of the *Alabama Rules of Criminal Procedure*[.] . . . The Alabama Court of Criminal Appeals affirmed the decision of the Rule 32 court with respect to all of these claims . . . and the Alabama Supreme Court denied petitioner's petition for writ of certiorari, without opinion. [] Based on the Court's review of these state court rules and the record of petitioner's trial, appeals of his conviction and sentence, and Rule 32 proceedings, the Court is satisfied that the state procedural law was firmly established and regularly followed, and the procedural bar was fairly and non-arbitrarily applied."); *Hurth v. Mitchem*, 400 F.3d 857, 860-864 (11th Cir. 2005) (discussing at length why Alabama's Rule 32.2(c) statute of limitations is firmly established and regularly followed by Alabama's courts). Accordingly, in light of petitioner's clear procedural defaults, this Court need address any cause and prejudice arguments made by Crumpton as well as his argument that application of the foregoing procedural bars would work a fundamental miscarriage of justice.

The undersigned finds that Crumpton has not demonstrated cause for his

procedural defaults. More specifically, Crumpton did not include either in his § 2254 petition (Doc. 1), or in his response to the undersigned's show cause order (*see* Doc. 16), any objective factors that would indicate that he was impeded from complying with Rules 32.2(a)(3), (a)(5), and (c) of the Alabama Rules of Criminal Procedure, and, therefore, he has not established cause for his procedural defaults. *See, e.g., Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003) ("'To establish "cause" for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court.'"), *cert.denied,* 543 U.S. 811, 125 S.Ct. 44, 160 L.Ed.2d 14 (2004).

The undersigned also finds that the fundamental miscarriage of justice/actual innocence exception does not apply in this case because petitioner has not satisfied the *Murray v. Carrier* standard. *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). That standard requires Crumpton to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." 477 U.S. at 496, 106 S.Ct. at 2649-2650. To be credible, a claim of actual innocence "requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 865, 130 L.Ed.2d 808 (1995); *see also id*. at 327, 115 S.Ct. at 867 ("To establish the requisite probability, the petitioner must show that it is more likely than not that no

28

reasonable juror would have convicted him in the light of the new evidence."). As previously found, Crumpton has not come forward with any evidence which establishes his actual innocence and thereby undermines his capital murder conviction. In fact, petitioner simply makes the conclusory arguments that "to allow [him] to stand convicted under a Statute that is Unconstitutional on its face, would fall within the 'narrow scope' of the 'miscarriage of justice exception'" (Doc. 16, at 4) and, further, that "[s]urely, [he] cannot stand convicted of an indictment that was returned based on evidence presented by an illegal prosecutor," (*id.* at 6). These conclusory statements simply do not constitute actual innocence arguments and need be rejected given the contrary evidence of record. Accordingly, this is not one of those rare cases in which the actual innocence exception is applicable.

>    D.    **Certificate of Appealability.**

Pursuant to Rule 11(a) of the Rules Governing § 2254 Cases, the undersigned recommends that a certificate of appealability in this case be denied. 28 U.S.C. foll. § 2254, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1).  A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C.

§ 2243(c)(2). Where, as here, a habeas petition is being denied on procedural grounds without reaching the merits of an underlying constitutional claims, "a COA should issue [only] when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 1604, 146 L.Ed.2d 542 (2000); *see Miller-El v. Cockrell,* 537 U.S. 322, 336, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003) ("Under the controlling standard, a petitioner must 'sho[w] that reasonable jurists could debate whether  (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further."'"). Because equitable tolling is an extraordinary remedy which is rarely granted, *see Diaz, supra,* 362 F.3d at 701 ("[T]his court has rejected most claims for equitable tolling."), and, further, because reliance upon Rules 32.2(a)(3), (a)(5), and (c) by Alabama courts is firmly established, *see Borden, supra; Hurth, supra*, and Crumpton has not established either cause (or prejudice) for the procedural default of his claims raised in this Court, the undersigned finds that a reasonable jurist could not conclude that this Court is in error for failing to reach the merits of petitioner's claims, *see, e.g., Coleman v. Thompson, supra,* nor could a reasonable jurist conclude that petitioner should be allowed to proceed further with respect to his claims. *Slack, supra*, 529 U.S. at 484, 120 S.Ct. at 1604 ("Where a plain procedural bar is

present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further.").

Rule 11(a) further provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.  *See, e.g., Griffin v. DeRosa*, 2010 WL 3943702, at *4 (N.D. Fla. Sept. 20, 2010) (providing for same procedure), *report & recommendation adopted sub nom. Griffin v. Butterworth*, 2010 WL 3943699 (N.D.Fla. Oct. 5, 2010).

## CONCLUSION

The Magistrate Judge recommends that Warren Crumpton's petition for writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254, be dismissed as time-barred under § 2244(d). Alternatively, this Court is procedurally barred from reaching the merits of petitioner's claims raised in the instant habeas corpus petition. Crumpton is not entitled to a certificate of appealability and, therefore, he is not entitled to appeal *in forma pauperis*.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this the 9th day of September, 2011.

 s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND <u>FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>**

l.        *Objection*.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days[8] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

> A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.        *Transcript (applicable Where Proceedings Tape Recorded)*.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

---

[8]        Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]" Fed.R.Civ.P. 72(b)(2).